BLOCK *et al.* v. PATRICK, *County Treasurer.*

No. 1724.    Opinion Filed February 11, 1913.

(130 Pac. 588.)

1.   MUNICIPAL CORPORATIONS — Local Improvements — Assessments. The provisions of section 6 of the Organic Act of the territory of Oklahoma, providing that all property subject to taxation shall be taxed in proportion to its value, does not apply to assessments made against lots for the purpose of covering the cost of local improvements.

2.   SAME—Constitutional Law—Due Process of Law. A statute that authorizes the trustees of an incorporated town, after notice to abutting property owners to construct sidewalks and guttering in front of their property and upon failure of such property owners to construct same, to construct such improvements and assess the cost thereof to the abutting property upon a frontage basis and to issue a tax warrant for the actual cost of labor and material obtained at the market price and used for such improvements, and making such tax warrant a lien against the property therein described, does not take property without due process of law and should not, upon that ground, be declared invalid.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County;*
*A. H. Huston, Judge.*

Action by G. H. Block and others against James S. Patrick, County Treasurer of Kingfisher County. Judgment for defendant, and plaintiffs bring error. Affirmed.

*W. A. McCartney,* for plaintiffs in error.

*R. W. Wylie, F. L. Boynton,* and *Burwell, Crockett & Johnson,* for defendant in error.

HAYES, C. J. Plaintiffs in error ·commenced this suit in the district court of Kingfisher county against defendant in error, as treasurer of that county, to enjoin the collection of certain special assessments of taxes made against plaintiffs' property to pay for the construction of guttering and sidewalks. The judgment in the court below denying to plaintiffs the relief they prayed for was rendered upon their petition and the answer of defendant thereto. As there is no controversy about the facts, it will be unnecessary to set ·out the pleadings *verbatim.*

In the month of November, 1902, the board of trustees of the town of Hennessey passed an' ordinance authorizing and directing the construction of certain brick gutters and sidewalks in said town. On January 14, 1903, the board passed a second ordinance requiring the construction of sidewalks upon another street in said town. Plaintiffs own property abutting upon one or the other of the streets upon which the improvements were ordered to be made. After personal notice served upon them, plaintiffs failed to make the improvements provided for by the ordinances, and thereupon the city let the contract for their construction, and the construction of the improvements was completed, without objection on the part of plaintiffs until the city made and presented its tax bill for the cost of such improvements. It is conceded that the statute authorizes the board of trustees, after notice to the abutting property owners to make such improvements, and, upon their refusal to do so, to contract for the construction of the improvements, and to tax the cost thereof against the abutting property in proportion to the frontage of each piece of property.

The first proposition of law urged by plaintiffs in error is that the statute is void, because in violation of section 6 of the Organic Act of the territory, which, in part, provides that:

"No tax shall be imposed upon the property of the United States, nor shall the lands or property of nonresidents, * * * nor shall any unequal discrimination be made in taxing different

kinds of property, but all property subject to taxation shall be taxed in proportion to its value."

It is urged that the statute violates this provision of the Organic Act, because the apportionment of the taxes for the cost of the improvements upon the abutting property is upon another basis than upon the value of the property. No lengthy consideration of this proposition is required. It has been determined against the contention of plaintiffs in *Jones et al. v. Holzapfel et al.,* 11 Okla. 405, 68 Pac. 511, and *Riley v. Carico,* 27 Okla. 33, 110 Pac. 738.

One of the sections of the statute under which the town authorities proceeded provides that, when a special assessment shall be ordered against the lots of the abutting owners, ten days' written or printed notice shall be given by personal service to the owner or agent of each lot included. If, at the expiration of this notice, the improvements required to be made are not made, then the municipal authorities may issue tax warrants for the actual cost of labor and material obtained at the market price and used for such improvements. Such tax warrants shall be a lien against the property therein described. Section 435, Wilson's Rev. & Ann. St. 1903. The notice required by this section was given; but the statute does not provide for any notice or hearing upon the benefits that the abutting property owners will receive from the improvements, or upon the proportion of cost thereof that shall be taxed against such piece of property. It is contended by counsel for plaintiffs that, on account of the failure of the statute to provide notice to the property owners and an opportunity for hearing upon the assessment which shall be made against their property, plaintiffs are denied the due process of law guaranteed by the fourteenth amendment to the federal Constitution.

We think it is clear that the notice prescribed by the statute is only for the purpose of giving to the abutting property owners the option of constructing the proposed improvements themselves, rather than to leave it to be done by the municipality and the same be taxed up against their property. The statute provides for and contemplates no hearing upon the question of bene-

fits to the abutting property that will result from the construction of the proposed improvements, or what proportion of the same shall be taxed against each piece of property; but we think the contention that the statute and the taxes assessed against plaintiffs' property thereunder are for these reasons invalid, has been determined against plaintiffs by different decisions of the federal Supreme Court.

In *Heman v. Allen,* 156 Mo. 534, 57 S. W. 559, the tax in question was levied against the property owners in a sewer district to pay for the construction of a district sewer. The charter of St. Louis, under which the sewer was constructed and the tax levied, provided that the district sewer might be established within the limits of any district to be prescribed by ordinance as approved by the board of public improvements, so as to connect with a public sewer, or some natural course of drainage; that the city assembly shall cause sewers to be constructed in the district whenever a majority of the property holders, residents therein, shall petition therefor, or whenever the board of public improvements shall recommend it necessary for sanitary or for other purposes. The charter neither provided for nor required that any notice or opportunity to be heard should be given to the property owners to determine the necessity of the construction of any such sewer; and when the sewer is completed, the assembly is authorized to compute the whole cost thereof and to assess it as a special tax against all lots of ground in the district, without regard to improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the public highway, and such tax, when proportioned and assessed against the property, constitutes a lien thereon. The property owners contended that the assessment of tax under that procedure took their property without due process of law, in that it afforded them no opportunity to be heard upon the question of benefits received by their property or upon the assessment of tax made against it. The judgment of the Supreme Court of the state, sustaining the validity of the tax, was affirmed on appeal by the Supreme Court of the United States. *Shumate v. Heman,* 181 U. S. 402, 45 L. Ed. 922. The decision in the fed-

eral Supreme Court was based upon *French v. Barber Asphalt & Paving Co.,* 181 U. S. 324, 45 L. Ed. 879, which also originated in the courts of Missouri, and involved the validity of a paving tax. In the last-mentioned case, the court, at considerable length and with thoroughness, reviews all its former cases that shed light upon what constitutes due process of law as involved in the levying of taxes against property for the payment of local or special improvements. The tax levied in that case, the validity of which was attacked by the property owners, had been levied against the abutting property upon a front-foot basis to pay for paving a street. The charter of the city authorized the common council to declare the work of paving any street with a pavement of defined character to be necessary, whereupon such resolution was required to be published for ten days. Thereafter, the owners of a majority of front feet on that part of the street to be improved had the right within 30 days to file a remonstrance with the city clerk against the proposed improvements, and thereby divest the common council of the power to make the improvements. But the charter provided for no notice of any hearing upon the necessity of the improvements or of the benefits that might result therefrom to the abutting property. Plenary power was vested in the council to order the pavement of the street, unless that power was taken from the council by petition of opposition signed by the owners of a majority of front feet. The minority property owner had no opportunity for a hearing either as to the benefits the proposed improvement would result in to his property, or what proportion of the cost of the improvements should be taxed against his property. Whether the improvements should or should not be constructed under the charter of the city was determined either by the council or a majority of the property owners, without any hearing. What property was benefited and the proportion of the cost that such property should pay was determined by the provisions of the charter to be the property abutting upon the portion of the street paved, and that the cost should be apportioned in the same ratio as the frontage of any piece of property was to the total frontage upon the improvement. The court held that a tax levied under this procedure

did not take property without due process of law.   In the opinion the court quoted with approval from one of its former decisions the following:

"In the absence of any more. specific constitutional restriction than the general prohibition against taking property without due process of law, the Legislature of the state, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either like other taxes upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of the commissioners. When the determination of the lands to be benefited is entrusted to commissioners, the owner may be entitled to notice and hearing upon the question whether their lands are benefited and how much.   But the Legislature has the power to determine by the statute imposing the tax what lands which might be benefited by the improvement are in fact benefited; and if it does so, its determination is conclusive upon the owners, and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the Legislature has conclusively determined to be benefited.   In determining what lands are benefited by the improvement, the Legislature may avail itself of such information as it deems sufficient, either through investigations by its committees, or by adopting as its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction."

In the same opinion the court also said:

"It was also said that the class of lands to be assessed for the purpose may be either determined by the Legislature itself, by defining a territorial district, or by other designation; or it may be left by the Legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited; that the rule of apportionment among the parcels of land benefited also rests within the discretion of the Legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits as estimated by commissioners."

In the case last cited it was held that the due process of law guaranteed by the fourteenth amendment to the federal Constitution imposes upon the states, when exercising their powers of taxation, no more rigid or stricter curb than is imposed upon the federal government by the fifth amendment in a similar exercise of power.

*Parsons v. District of Columbia,* 170 U. S. 45, 42 L. Ed. 943, involves the application of the phrase "due process of law," as used in the fifth amendment, to an assessment levied for laying water mains in the District of Columbia, under the act of Congress that fixed the rate of assessment at $1.25 per lineal front foot against all lots or lands abutting upon the street in which the water main was laid. The act invested the commissioners of the city with power to lay water mains and water pipes whenever the same in their judgment should be necessary for public safety, comfort or health, and provided for no notice to the property owners nor a hearing upon the necessity of the construction of any water main or upon the benefits that would result therefrom to the adjacent property. The court stated its conclusion in the following language:

"Our conclusion is that it was competent for Congress to create a general system to store water and furnish it to the inhabitants of the district, and to prescribe the amount of the assessment and the method of its collection; and that the plaintiff in error cannot be heard to complain that he was not notified of the creation of such a system or consulted as to the probable cost thereof. He is presumed to have notice of these general laws regulating such matters. The power conferred upon the commissioners was not to take assessments upon abutting properties, nor to give notice to the property owners of such assessments, but to determine the question of the propriety and necessity of laying water mains and water pipes, and of erecting fire plugs and hydrants, and their *bona fide* exercise of such a power cannot be reviewed by the courts."

Another case in point is *Webster v. Fargo,* 181 U. S. 394, 45 L. Ed. 912.

The Legislature, by the statute here involved, has itself determined and designated what property will be benefited by the construction of. sidewalks and guttering in incorporated

towns and villages. It is the property abutting on such improvements; and in fixing the proportion of the cost of the improvements that such property shall pay, the Legislature may be presumed to have determined to what extent at least such property will be benefited. It is not left to the discretion of the local officers to determine what property will be benefited or the extent thereof; and a notice to the property owners and a hearing thereon could avail nothing in determining the amount of the assessment that should be levied against the property of each, except to see that a correct application of the basis prescribed by the statute is made.

It is not contended here that any fraud was practiced by the board of trustees, or that any mistake was committed in the assessment levied. The sole contention is that the assessment is void.

In *City of Perry v. Davis et al.,* 18 Okla. 427, 90 Pac. 685, the Supreme Court of the territory, speaking through Mr. Justice Garber, upon a similar question, said:

"At this juncture it is contended that the above notice afforded the owners of property no opportunity to appear and be heard in the matter of fixing the amount of their individual assessments. This was not necessary. Section 7 of the act provides: 'As soon as any district sewer shall have been completed the city engineer, or other officer having charge of the work, shall compute the whole cost thereof, which shall also include all other expense incurred by the city in addition to the contract price of the work, and shall apportion the same against all the lots or pieces of ground in such district, exclusive of improvements, in proportion to the area of the whole district exclusive of public highways, and such officer shall report the same to the commissioner and councilmen, and the mayor and councilmen shall thereupon levy and assess a special tax by ordinance against each lot or piece of ground within the district.' * * * ' Of what avail would such an opportunity be where the Legislature has already fixed a mode of assessment which adjusts itself automatically, and where, after the cost of construction has been ascertained, the amount of the individual assessment is determined, not by a discretionary power, but by a mathematical calculation? In what way could a hearing affect the amount of the assessment, when the Legislature has said that the whole cost shall be apportioned against the lots in said district exclu-

sive of improvements in proportion to the area? There is no valuation of property or of benefits, no exercise of discretionary power, no equalizing board, or board of appraisers, or commissioners—nothing but a mathematical calculation."

It follows from these views that the judgment of the trial court should be affirmed.

All the Justices concur.