CITY OF MUSKOGEE *et al.* v. RAMBO *et al.*

No. 3543.	Opinion Filed January 13, 1914.

Rehearing Denied April 28, 1914.

(138 Pac. 567.)

1.	MUNICIPAL CORPORATIONS—Sewer Assessments—Ordinance—Jurisdiction to Enact. Under chapter 15, art. 15, Comp. Laws 1909, the passage and publication of the ordinance, of necessity, pursuant to section 989 of said act, confers jurisdiction upon the municipal authorities of cities having a population of not less than 1,000 persons to establish a sewer district and construct a district sewer therein, and to provide that the cost of such district sewer shall be apportioned against all the lots or pieces of ground in such district, exclusive of the public highways, and to levy and assess a special tax by ordinance against each lot or piece of ground within the district to pay for the construction of such sewer.

2.	SAME—Injunction—Estoppel. Where there is jurisdiction, the property owner who sees such improvement made with knowledge that the municipal authorities intend to levy and assess a special tax against his property, and that those who do the work can be compensated in no other way, and offers no objection until after the work has been done, cannot resort to a court of equity to enjoin such assessment upon the ground that the proceedings subsequent to the ordinance of necessity have not been regular.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Suit by J. J. Rambo and others against the City of Muskogee and others. Decree for plaintiffs, and defendants bring error. Reversed and remanded.

*Gibson & Thurman (S. V. O'Hare, W. T. Hutchings,* and *Jas. C. Davis,* of counsel), for plaintiffs in error.

*Benj. B. Wheeler, John R. Thomas, Grant Foreman,* and *C. L. Cunningham,* for defendants in error.

KANE, J. This was a suit in equity, commenced by the defendants in error, plaintiffs below, against the plaintiffs in error, defendants below, for the purpose of enjoining the enactment of an ordinance by the city of Muskogee, levying an assessment upon various lots situated in said city to pay for the construction of certain sewers. Upon trial to the court a decree was entered, granting the relief prayed for, to reverse which this proceeding in error was commenced.

It seems that on the 12th day of September, 1910, the council of said city duly passed and published an ordinance, entitled "An ordinance creating sewer district No. 12 in the city of Muskogee, Oklahoma; providing for the construction of a sewer therein, adopting plans, specifications, profiles, plats, sections and complete estimate of costs of the city engineer for the construction of the said sewer, prescribing the dimensions and material to be used in the construction of the same, and declaring an emergency," wherein, among other things, it is provided that the mayor and councilmen deemed it necessary to construct a sewer within and to drain the district created and described by boundaries as sewer district No. 12, in accordance with plans, specifications, profiles, plats, and sections on file in the office of the city engineer. Thereafter, after the city engineer's specifications, profiles, plats, sections, and estimate of cost were approved by the mayor and council of said city, the city clerk was directed to, and did, advertise for bids for the construction of said sewer in said district. Thereafter the city clerk caused to be published for ten consecutive days a notice to contractors, to the effect that he would receive bids, to be made upon printed blanks furnished

by the city engineer, for the construction of a sewer in sewer dis-
trict No. 12, describing said district, of brick, concrete, vitrified
brick, and vitrified tile pipe, in accordance with the plans and
specifications adopted by the mayor and council and filed in the
office of the city engineer, from whom the same might be ob-
tained, and requiring said bids to be made for the larger sections
of said sewer, of brick, Class A and Class C concrete, and further
stated that said bids would be opened in the council chamber at
8 o'clock p. m. on October 17, 1910, and that the contract would
be awarded to the lowest and best bidder. Thereafter four bids
were filed with the city clerk, and, upon being opened by the
council at the time stated in said notice to contractors, and be-
ing tabulated by the city engineer, it appears that F. B. McCor-
mack was the lowest and best bidder on the work, using either
brick or Class C concrete, whereupon he was awarded the con-
tract. Shortly thereafter the contractor commenced work on the
sewer and completed the same without any objection or protest
of any kind from any of the plaintiffs, although during the
progress of the work he had two large machines, weighing 30
tons each, digging ditches from three to eight feet wide in all
parts of the district, as described in the ordinance and published
notices, piling up dirt from fifteen to twenty feet high, and had
large quantities of vitrified sewer pipe, brick, sand, cement and
gravel scattered all over said district in such a way as to be
noticeable to any person in that vicinity. Prior to the foregoing
proceedings, the mayor and council of the city of Muskogee had
established street improvement district No. 94, including a por-
tion of Fifteenth street lying within the subsequent boundaries
of said sewer district, and had let a contract for the paving and
draining of said street, and said improvement had been con-
structed, the paving having been laid after the building of a drain
about three blocks long, the lower end of which was left closed
up, or pent in, six feet under the surface of the ground, because
there was at that time no place to dump it. This pent-in sewer
was built as a part of the street improvement at a cost of $500
to the city of Muskogee and of $450 to the abutting property
owners. This pent-in sewer was afterwards connected with the

sewer built in district No. 12. Prior to the passage of the ordinance creating sewer district No. 12, the city engineer had prepared specifications for storm sewers and had the same printed in pamphlet form, there being many copies all alike in his office when the ordinance was passed. These specifications. provided in detail, among other things, what quality of the various materials was to be used in building storm sewers, the different classes of excavation, and how excavating was to be done, how mixtures were to be made, and the manner in which all work should be done. Aside from the recital in the ordinance that plans, specifications, profiles, plats, and sections were then on file in the office of the city engineer, it does not affirmatively appear that a copy of the specifications for storm sewers was separated from the others and marked "Filed," but it does appear that at all times from the creation of sewer district No. 12 to the trial of this case such specifications were in the city engineer's office, and were the only ones to which the ordinance creating the sewer district could have referred. After the work had been entirely completed by the contractor, the city authorities were about to levy special assessments on the abutting property in sewer district No. 12, in payment of said improvement, whereupon this suit was commenced.

The grounds upon which the plaintiffs pray relief are: (1) That the Junction avenue sewer, although it is designated a district sewer in the ordinance, is in law and fact a public sewer, which ought to be paid for by the people, and no authority is conferred by law upon the city to build such a sewer by assessing the cost thereof against the property owners of the prescribed district. (2) That the construction of said sewer was an effort on the part of the city authorities to tax the property owners of sewer district No. 12 without making provision for taxing said area. (3) A sewer district, once having been created, which embraced part of the territory within district No. 12, and a district sewer built therein, and the cost of said sewer having been assessed against the property of said district, the city is without authority of law to change the boundaries of that district, include it in another sewer district, or reassess the property own-

ers for the cost of another sewer outside the original district. (4) No specifications having been prepared or adopted by the council, as provided by the statutes, and placed on file in the office of the city engineer, as indicated by the ordinance creating the district and providing for the letting of the contract, no legal contract could be entered into for building a district sewer, or a valid assessment made to pay the costs thereof. (5) The law of Oklahoma, under which the sewer herein is constructed, is unconstitutional and void, in that it seeks to impose an assessment for a local improvement without notice to or an opportunity to be heard on the part of the parties to be assessed.

Counsel for the defendants contend: (1) That it was the intention of the Legislature that a municipal corporation should exercise its own discretion in determining whether a sewer should be constructed as a public sewer, or as a district sewer, and that their action in declaring this to be a district sewer is conclusive upon that question. (2) That the construction of a drain for three blocks as a part of a paving district (street improvement district No. 94) could not invalidate the proceedings for the creation of sewer district No. 12, the letting of the contract therein, nor relieve the property of plaintiffs from assessment for the cost of the sewer in district No. 12. (3) The court erred in concluding as a matter of law that the insufficiency of the specifications for the sewer in district No. 12 was a jurisdictional defect which in itself avoided the contract between the defendants and the city of Muskogee. (4) That the constitutionality of the sewer law of this state is no longer an open question in this jurisdiction. (5) The court erred in refusing to conclude that the silence and acquiescence of the property owners during the construction of the sewer estopped them from raising objections to the proceedings of the city of Muskogee in the creation of the sewer district and the letting of the contract for building a sewer therein.

In view of the numerous decisions of this court, holding under similar circumstances to the effect that, where a property owner stands by and sees public improvements that will benefit his property go on, with full knowledge that he is to be assessed therefor, without making any objection thereto until after the

work is entirely completed, such silence and acquiescence constitute such laches as will bar him from resorting to a court of equity to enjoin the payment of the special assessments levied for the purpose of paying for the same, we do not deem it necessary to determine any one of the many questions argued by counsel for defendants in error as to the legality or illegality of the proceedings under which the sewers herein were constructed, subsequent to the passage and publication of the ordinance declaring the necessity for the sewer, pursuant to section 989, Comp. Laws 1909 (Rev. Laws 1910, sec. 468), which provides that:

"Whenever the mayor and councilmen shall deem such district sewers necessary, as provided for in section three of this act (986 [Rev. Laws 1910, sec. 465]) they may proceed with such work and shall cause to be prepared sections, profiles, and specifications for the work, together with the complete estimate of the costs. And the mayor and councilmen shall have the power to adopt any material or methods for the construction of such sewers and to have such plans prepared in accordance with its directions as to the kind of material used. Upon the completion of the plans and specifications and their adoption by the mayor and councilmen, they shall advertise for sealed bids for the performance of such work, for at least ten days if published in a daily newspaper, or at least two weeks if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the mayor and councilmen with reference to the letting of such contract, and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the city, and all property owners against any loss or damage by the negligent execution of such work. At the time and place specified in the notice, the mayor and councilmen shall award the contract to the lowest responsible bidder for the work, which contract shall in no case exceed the estimate of costs submitted with the plans and specifications and shall be subject to the right of the mayor and councilmen to reject any and all bids and to readvertise for other bids when none of the same are, in their judgment, satisfactory. Provided, that where a majority of the property owners in any block petition the mayor and councilmen for a lateral sewer through or in such block, the advertising for bids shall not be necessary, but the mayor and councilmen may cause such improvement to be made without such notice."

*City of Perry v. Davis et al.,* 18 Okla. 427, 90 Pac. 865; *Kerker v. Bocher,* 20 Okla. 729, 95 Pac. 981; *Paulsen v. City of El Reno,* 22 Okla. 734, 98 Pac. 958; *Jenkins v. Oklahoma City et al.,* 27 Okla. 230, 111 Pac. 941; *Lonsinger v. Ponca City,* 27 Okla. 397, 112 Pac. 1006; *Weaver v. City of Chickasha,* 36 Okla. 226, 128 Pac. 305; *Shulz v. Ritterbusch,* 38 Okla. 478, 134 Pac. 961; *City of Bartlesville et al. v. Holm et al., ante,* 139 Pac.; 273; *City of Bartlesville et al. v. Bucy, ante,* 139 Pac. 277; and *City of Bartlesville v. Revard, ante,* 139 Pac. 277. The foregoing authorities support the doctrine that where there is jurisdiction, the property owner who sees the improvement made and offers no objection cannot defeat the assessment upon the ground that the proceedings have not been regular. 2 Elliott, Roads & Streets, sec. 772. On the question of what constitutes jurisdictional facts, the courts seem to be in irreconcilable disagreement. We venture to suggest, however, that in some of the cases where, as in this case, the attack was collateral, the courts have erred in pronouncing the proceeding absolutely void, and that in others, where the attack was direct, they erred in doing more than declaring the proceedings to be erroneous. The true rule, we take it, is that if the proceedings are entirely without or beyond the authority of the tribunal, they are absolutely void; but where they are not entirely beyond the scope of the jurisdiction of the tribunal, they are simply voidable. 1 Elliott, Roads & Streets (3d Ed.) sec. 607; *Bartlesville v. Holm et al., supra.*

There seems to be no doubt that the ordinance declaring the necessity for a sewer district passed by the authorities of the city of Muskogee, in pursuance of section 989, *supra,* prescribed the limits of the district as provided for by section 986 of the same act, and that the same was published as required by law. It is admitted that, notwithstanding the passage and publication of the ordinance, of necessity, the title and substance of which have been hereinabove set out, and the other facts which tended to apprise the property owners of the fact that extensive public improvements tending to benefit their property were contemplated, which the municipal authorities intended should be paid for by special assessments against their property for benefits,

the work of constructing the sewer progressed for approximately three months, during which time it was practically completed, before the property owners were aroused to contest the right of the city and the contractor to have the property benefited taxed to pay for the improvement.

Counsel for the property owners say, however, that:

"The sewer law of Oklahoma does not provide an opportunity for protest, and no matter if every property owner in the district had protested against the building of this sewer, either before or after the contractor had begun work, their protest would have availed them nothing."

In *City of Perry v. Davis et al., supra,* Mr. Justice Garber, who delivered the opinion for the court, on the question of notice, said:

"Thus we see that the property owners of sewer district No. 1 in the city of Perry were notified: First, by the publication of the ordinance creating the district, stating that it was deemed necessary for sanitary purposes, and that a sewer would be constructed therein according to certain regulations set out in the ordinance; second, by the publication for ten consecutive days in a newspaper of general circulation in the city of Perry of the notice for bids for the construction of the sewer; third, the publication for four consecutive weeks of the ordinance levying and assessing the tax. Sufficient notice was therefore given to the defendants in error in this case, who were all residents of the city of Perry, affording them opportunity to protect their rights before the tax levied became a fixed charge or lien against their property."

The same may be said of the property owners who are parties to the instant suit. In speaking of the remedies available to the property owners and their duty to pursue the same promptly upon receiving such notice, the learned Justice said:

"It was the plain duty of the defendants in error, upon the publication of the ordinance creating the sewer district, or when they learned that labor and money were being expended in the actual construction of the sewer, to vigorously oppose and protest against it; then was an opportune time to test, by injunction or other proceedings, the legality of the various steps being taken."

It was under the same statute construed in that case that the improvement herein involved was constructed. Indeed practically all the sewer systems in all the cities in this state were constructed under the same act, and the construction placed thereon in *City of Perry v. Davis et al., supra,* has been accepted as final by the bench and bar of Oklahoma, as a territory and as a state, for a great many years. Under the construction placed upon the act, the publication of the ordinance, of necessity, has been deemed sufficient notice to the property owners of all the facts therein contained, and injunction or other proceedings in the ordinary courts of general jurisdiction have been deemed to be their remedy if they have any complaints or objections to make to the validity of the proceeding under which the publication for the improvement is made. Neither the act itself nor the decision of the court fixes any specific time within which complaints or objections may be filed. But the decision unquestionably holds that the act under which the improvement was made constitutes due process of law; that the passage and publication of the ordinance, of necessity, in pursuance of the act, constitutes notice and confers jurisdiction upon the city authorities to perform the work and provide for the payment therefor; that it was the duty of the property owners, upon the publication of the ordinance creating the sewer district, or upon discovering that labor and money were about to be expended in the actual construction of a public work which would tend to benefit their property, to promptly take action, by injunction or otherwise, against the proceedings providing for such improvements, if in their judgment they are irregular. Under the rule therein laid down, the property owners cannot stand by without objection or protest while the public work is in progress, and when the entire work is completed and they are called upon to pay their respective assessments for the benefits received, then invoke relief by injunction in a court of equity. Other cases to the same effect are: *Lumber Co. v. Muskegon,* 152 Mich. 59, 115 N. W. 957; *Townsend v. Manistee,* 88 Mich. 408, 50 N. W. 321; *Elkhart v. Wickwire,* 121 Ind. 331, 22 N. E. 342; *Collins v. Holyoke,* 146 Mass. 298, 15 N. E. 908; *Paulson v. Portland,* 16 Ore. 450, 19 Pac. 450,

1 L. R. A. 673; *Pittsburg, etc., R. Co. v. Fish,* 158 Ind. 525, 63 N. E. 454; *Spaulding v. Baxter,* 25 Ind. App. 485, 58 N. E. 551.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to proceed in accordance with this opinion.

All the Justices concur.